UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLENE R. WARNER a/k/a
CHARLENE R. GILBERT-WARNER,

    Plaintiff,                                       Case No. 12-15185

v.                                                 Hon. Patrick J. Duggan

THE FEDERAL HOME LOAN
MORTGAGE CORPORATION and
BANK OF AMERICA, N.A.,

    Defendants.
_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

       This action, brought against Defendants Federal Home Loan Mortgage Corporation ("Freddie Mac") and Bank of America, N.A. ("BANA") arises out of a residential mortgage foreclosure. Plaintiff Charlene Warner seeks damages as well as various forms of equitable relief to remedy alleged fraud committed at the time the loan originated. It is undisputed that Plaintiff defaulted under the terms of the loan agreement, that the foreclosure by advertisement is complete, and that the redemption period expired without Plaintiff availing herself of the right to redeem. Presently before the Court is Defendant's Motion to Dismiss, filed pursuant to Federal Rule of Civil Procedure 12(b)(6). Having determined that that oral argument would not significantly aid the decisional process, the Court dispensed with oral argument pursuant to Local Rule 7.1(f)(2). For the reasons stated herein, the Court grants Defendant's Motion and dismisses Plaintiffs' Complaint.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

On or about August 31, 2006, Plaintiff refinanced an existing mortgage loan on real property located at 6702 Barrie Drive, Canton, Michigan 48187 (the "Property"). (Note, Compl. Ex. 2.) This refinancing came about as a result of an application completed by non-party Countrywide Home Loans. The application was completed over the phone and although Plaintiff paid for an appraisal, no appraiser ever entered or inspected her residence. (Compl. ¶¶ 9-10.) In order to satisfy "loan to value guidelines and get the mortgage approved[,]" "the appraisal was inflated by approximately $40,000.00 to $50,000.00[.]" (*Id.* ¶ 11.) A further problem with the application was that Plaintiff's income "was calculated using income that should not be counted pursuant to the guidelines[,]" resulting in Plaintiff's income being inflated by nearly $500 a month. (*Id.* ¶¶ 12-13.) Plaintiff claims that her resulting housing payment to income ratio stood around forty-eight percent (48%), far higher than the twenty-eight percent (28%) ratio delineated in the "applicable guideline[.]" (*Id.* ¶¶ 14-15.) "As a result of this predatory lending, [P]laintiff's home went to sheriff sale [.]" (*Id.* ¶ 16.)

Ultimately, after the application was submitted and approved, Plaintiff accepted a $292,000 refinance loan from non-party America's Wholesale Lender, and, in exchange, executed a promissory note secured by a mortgage on the Property. (Note, Compl. Ex. 2.) Plaintiff granted the mortgage to non-party Mortgage Electronic Registration Systems, Inc. ("MERS"), solely as nominee for Lender and Lender's successors and assigns. On September 14, 2011, MERS assigned the mortgage to BANA, as successor

2

by merger to BAC Home Loans Servicing L.P. and the assignment was recorded with the Wayne County Register of Deeds. (Defs.' Mot. Ex. A.)

After Plaintiff defaulted on the note and mortgage, BANA initiated foreclosure by advertisement proceedings, which resulted in a sheriff's sale held on November 16, 2011. (Sheriff's Deed, Defs.' Mot. Ex. B.) Freddie Mac purchased the Property at the foreclosure sale for approximately $379,000. (*Id.*) Pursuant to Michigan law, the statutory redemption period expired on May 16, 2012. Mich. Comp. Laws § 600.3240(8). Plaintiff never redeemed the Property.

On July 25, 2012, Plaintiff initiated this action by filing a Complaint in Wayne County Circuit Court.[1] Defendants timely removed this action on the basis of federal question and diversity jurisdiction. 28 U.S.C. §§ 1331, 1332, 1441, 1446. On December 10, 2012, Defendants filed a Rule 12(b)(6) motion to dismiss.

Plaintiff's Complaint alleges eight causes of action: (1) Count I – Fraud and Misrepresentation; (2) Count II – Breach of Fiduciary Duty; (3) Count III – Common Law Rescission and/or Reformation; (4) Count IV – Quiet Title; (5) Count V – Credit Repair Organizations Act ("CROA") Violation; (6) Count VI – Michigan Mortgage Brokers, Lenders, and Servicers Licensing Act ("MBLSA") Violation; (7) Count VII – Injunctive Relief; and (8) Count VIII – Equitable Right of Recoupment. (Compl.)

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) allows the Court to make an assessment as to whether a plaintiff's pleadings have stated a claim

---

[1] Case No. 12-009837-CH.

upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). Under the Supreme Court's articulation of the Rule 12(b)(6) standard in *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555-56, 570, 127 S. Ct. 1955, 1964-65, 1974 (2007), the Court must construe the complaint in favor of the plaintiff and determine whether plaintiff's factual allegations present claims plausible on their face. This standard requires a claimant to put forth "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" the requisite elements of their claims. *Id.* 550 U.S. at 557, 127 S. Ct. at 1965. Even though the complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (citing *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965) (internal citations omitted); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief [.]").

In determining whether a plaintiff has set forth a "claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974), courts must accept the factual allegations in the complaint as true, *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965. This presumption, however, does not apply to legal conclusions. *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. Therefore, to survive a motion to dismiss, a plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters*, 502 F.3d at

4

548 (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964-65) (internal citations and quotations omitted).

Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of [a legal transgression], the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)) (internal citations omitted). In conducting its analysis, the Court may consider the pleadings, exhibits attached thereto, and documents referred to in the complaint that are central to the plaintiff's claims. *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999).

### III. ANALYSIS

Plaintiff's Complaint seeks damages, an order quieting title in Plaintiff's favor and either setting aside the mortgage or setting aside the sheriff's sale, and an order enjoining eviction while this matter is pending. The Court (1) begins by analyzing claims bearing on Plaintiff's request to set aside the sheriff's sale and (2) then proceeds to analyze the causes of action alleged in Plaintiff's Complaint.[2]

**A.      Validity of Sheriff's Sale**

In Michigan, statutory law governs foreclosure sales by advertisement. *Senters v. Ottawa Sav. Bank, FSB*, 443 Mich. 45, 50, 503 N.W.2d 639, 641 (1993). Thus, "[o]nce the mortgagee elects to foreclose a mortgage by this method, the statute governs the"

---

[2] Because many of the counts are not causes of action, but rather types of relief, the Court addresses them under the fraud in the inducement heading.

5

entire process. *Id.* (citing Mich. Comp. Laws § 600.3201, *et seq.*). Mortgagors may redeem the foreclosed property within six months of a sheriff's sale. Mich. Comp. Laws § 600.3240(8). If no redemption is made, the sheriff's deed "become[s] operative, and [] vest[s] in the grantee named therein . . . all the right, title, and interest [] the mortgagor had[.]" *Id.* § 600.3236.

In *Piotrowski v. State Land Office Board*, the Michigan Supreme Court held that mortgagors lose "all their right, title, and interest in and to the property at the expiration of their right of redemption." 302 Mich. 179, 186, 4 N.W.2d 514, 516 (1942). This rule of law – holding that absolute title vests in the purchaser at the foreclosure sale upon expiration of the redemption period – has been applied consistently "to bar former owners from making any claims with respect to the foreclosed property after the end of the redemption period." *Hall v. Green Tree Servicing, L.L.C.*, No. 12-11811, 2012 U.S. Dist. LEXIS 85955, at *8-9 (E.D. Mich. June 21, 2012) (Edmunds, J.) (collecting cases).

There is, however, one important caveat to the general rule described above. Once a foreclosure sale has taken place and the redemption period has run, a court may allow "an equitable extension of the period to redeem" if a plaintiff makes "a clear showing of fraud, or irregularity" by the defendant. *Schulthies v. Barron*, 16 Mich. App. 246, 247-48, 167 N.W.2d 784, 785 (1969); *see also Freeman v. Wozniak*, 241 Mich. App. 633, 637, 617 N.W.2d 46, 49 (2000) ("[I]n the absence of fraud, accident or mistake, the possibility of injustice is not enough to tamper with the strict statutory requirements.") (citing *Senters*, 443 Mich. at 55, 503 N.W.2d at 643). Notably, the purported fraud or irregularity must relate to the foreclosure procedure. *Reid v. Rylander*, 270 Mich. 263,

6

267, 258 N.W. 630, 631 (1935) (holding that only the foreclosure procedure may be challenged after a sale); *Freeman*, 241 Mich. App. at 636-38, 617 N.W.2d at 49 (reversal of sheriff's sale improper without fraud, accident, or mistake in foreclosure procedure).

Because the redemption period has expired in this case, Plaintiff must make a plausible showing of fraud or irregularity to state a claim for the relief sought, which includes an order from the Court either setting aside the mortgage or setting aside the sheriff's sale. Plaintiff's admission that "she has not alleged any defects in the sale itself[,]" (Pl.'s Resp. 15), negates the possibility of setting aside the sheriff's sale, *Reid*, 270 Mich. at 267, 258 N.W. at 261 (explaining that "underlying equities . . . bearing on the instrument" may not be challenged once the statutory redemption period has expired). The Court dismisses Plaintiff's fraud count (Count I) and quiet title count (Count IV) to the extent they seek to set aside the sheriff's sale.

**B.     Individual Causes of Action**

*1.     Fraud in the Inducement*

Plaintiff's theory is that she was the victim of fraud in the inducement and that Defendants are liable for this fraud as assignees. (Pl.'s Resp. 9-10.) Because "the mortgage was fraudulently induced[,] . . . [P]laintiff is exercising her option to void it." (*Id.* at 14.) Although Plaintiff's allegations of fraud were insufficient to set aside the sheriff's sale, Plaintiff seeks other relief as a result of the alleged fraud, including rescission and/or reformation of the mortgage and note (Count III), an order quieting title in her favor (Count IV), and damages.

In Michigan, fraud in the inducement "occurs where a party materially misrepresents future conduct under circumstances in which the assertions may reasonably be expected to be relied upon and are relied upon." *Custom Data Solutions, Inc. v. Preferred Capital, Inc.*, 247 Mich. App. 239, 242-43, 733 N.W.2d 102, 104-05 (2006) (citation omitted). To establish fraud in the inducement, a plaintiff must show:

> "(1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth and as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage."

*Id.* at 234, 722 N.W.2d at 105 (citations omitted). Fraud in the inducement renders the ensuing contract voidable at the plaintiff's option. *Id.* In order to survive a motion to dismiss, Plaintiff must comport with Federal Rule of Civil Procedure 9(b), which provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To satisfy this standard, a claimant must "(1) specify the statements the plaintiff contends were fraudulent; (2) identify the speaker; (3) state where and when the statements were made; and (4) explain why the statements were fraudulent." *Louisiana School Employees' Ret. Sys. v. Ernst & Young, L.L.P.*, 662 F.3d 471, 478 (6th Cir. 2010).

Here, Plaintiff alleges that "Defendant representations, both verbal and through their disclosures, up to and through closing, were material representations to [P]laintiff regarding her qualification for the loan, ability to repay, and value of her home."

8

(Compl. ¶ 18.) Plaintiff does not specify the statements she contends were fraudulent but merely refers to the general subject matter of the alleged statements. Plaintiff also does not explain why the statements were fraudulent.

Although Plaintiff similarly fails to identify the speaker, the Court infers the alleged misrepresentations relate to the conduct of an agent of the originating lender, which is not a party to this action. (*Id.* ¶ 9 (indicating that Plaintiff's loan application was submitted telephonically).) Plaintiff argues that BANA and Freddie Mac are liable for the purported fraud in the inducement because they are assignees and therefore "stand in the shoes of the originating entities. As a result, the fraud committed at origination runs with the mortgage and note." (Pl.'s Resp. 10.) Even if Plaintiff had adequately pled fraud, which she has not, to the extent the original lender committed misconduct during the loan origination, such conduct cannot be imputed to BANA and Freddie Mac as assignees. *Stacey v. Vista Mortgage Corp.*, No. 10-13769, 2011 WL 6650598, at *3 (E.D. Mich. Dec. 21, 2011) (unpublished) (citing *Swarich v. OneWest Bank, FSB*, No. 09-13346, 2009 WL 4041947, at *5 (E.D. Mich. Nov. 20, 2009) (unpublished) (granting defendant's motion to dismiss because the alleged misrepresentations were made by an employee of the original lender, and not by any employee of defendant company, the current holder of the mortgage)).

Because Plaintiff is not asserting a contract claim but rather a tort claim, Plaintiff has to allege a duty owed to Plaintiff by Defendants. "The Michigan Supreme Court has held that in 'tort actions based on a contract,'" such as the case here, "'courts should use a 'separate and distinct mode of analysis.'" *Galati v. Wells Fargo Bank*, No. 11-11487,

9

2011 WL 5178276, at *8 (E.D. Mich. Nov. 1, 2011) (unpublished) (quoting *Fultz v. Union-Commerce Assoc.*, 470 Mich. 460, 467, 683 N.W.2d 587, 592 (2004)).  In this analysis, "the threshold question is whether the defendant owed a duty to the plaintiff that is separate and distinct from the defendant's contractual obligations.  If no independent duty exists, no tort action based on a contract will lie."  *Id.*  Plaintiff has not alleged the existence of such a duty.

For the reasons above, Plaintiff fails to state a claim upon which relief may be granted, as misconduct in the loan origination cannot be imputed to the assignee of a mortgage.  Count I is accordingly dismissed.  The Court will also deny Plaintiff's request to amend the fraud allegations as in light of the discussion above, any such amendment would be futile.

Moreover, Count III seeks to rescind or reform the mortgage contract and Count VI seeks to quiet title on account of the underlying fraud.  (Pl.'s Resp. 11.)  Plaintiff has alleged neither facts nor a legal basis supporting application of these remedies against BANA or Freddie Mac.  As such, the Court dismisses Counts III and IV.

### 2.   *Count II – Breach of Fiduciary Duty*

Count II of Plaintiff's Complaint alleges a breach of fiduciary duty.  Plaintiff asserts that she "reposed faith, confidence, and trust in [D]efendant Bank of America, as a successor in interest to Countrywide."  (Compl. ¶ 25.)  This trust was violated when "Defendant abused and betrayed [Plaintiff's reasonable] reliance by changing the terms of the loan at the last minute, failing to give the paid for loan discount fee, and through its other actions [during] the application and closing processes."  (*Id.* ¶ 27.)  These claims,

like the fraud in the inducement claim above, are not imputable to either Defendant here. Plaintiff has not pled the existence of any duty on behalf of BANA or Freddie Mac, the latter of which merely purchased the property at the sheriff's sale, to investigate the propriety of Plaintiff's loan origination.

Under Michigan law, "a fiduciary relationship arises from the reposing of faith, confidence, and trust and the reliance of one on the judgment and advice of another." *Teadt v. Lutheran Church Mo. Synod*, 237 Mich. App. 567, 580-81, 603 N.W.2d 816, 823 (1999). "[T]here is generally no fiduciary relationship between a mortgagor and a mortgagee." *Coyer v. HSBC Mortgage Servs., Inc.*, 701 F.3d 1104, 1108 (6th Cir. 2012) (citing *Sallee v. Fort Knox Nat'l Bank, N.A. (In re Sallee)*, 286 F.3d 878, 893 (6th Cir. 2002)). Although BANA became the mortgagee after MERS assigned BANA the mortgage, Plaintiff has not shown that any special circumstances exist to avoid the general rule that such a relationship does not involve fiduciary duties. *Id.* Plaintiff has also not pled any circumstances justifying the imposition of a fiduciary duty on Freddy Mac, the purchaser of the property at the sheriff's sale.

In light of the analysis above, the Court dismisses Count II.

### 3. *Count V – CROA Violation*

Plaintiff contends that Defendants violated the CROA, 15 U.S.C. § 1679b. Defendants contend that neither is a credit repair organization, that neither provided credit repair services to Plaintiff, and that the statute is therefore inapplicable. The Court agrees with Defendants.

To survive a motion to dismiss, Plaintiff must plead that Defendants fall within the ambit of the statute, which requires showing that Defendants are credit repair organizations. *Abo-Hassan v. Gold Star Mortgage Fin. Group*, No. 12-14421, 2013 WL 249603, at *4 (E.D. Mich. Jan. 23, 2013) (unpublished). This, Plaintiff cannot do. The CROA specifically exempts depository institutions such as BANA from the definition of a credit repair organization. 15 U.S.C. § 1679a(3)(B)(iii) (defining depository institution by reference to 12 U.S.C. § 1813, which provides that a depository institution "means any bank or savings association"). Similarly, there is no evidence that Freddie Mac provided services aimed at "improving [Plaintiff's] credit record, credit history, or credit rating[,]" or that it "provid[ed] advice or assistance to [Plaintiff] with regard to any [such] activity or service[.]" 15 U.S.C. § 1679a(3)(A)(i)-(ii).

Because neither Defendant is subject to the CROA given the facts of this case, the Court dismisses Count V.

### 4. *Count VI – MBLSA Violation*

Plaintiff alleges that Defendants[3] violated the MBLSA. Mich. Comp. Laws § 445.1651, *et seq.* Exactly how Defendants violated this statute is unclear, as Plaintiff simply copied various prohibited acts from Michigan Compiled Laws §§ 445.1672 and 445.1673. Some of the alleged violations simply have no factual basis. By way of illustration, Plaintiff alleges that Defendants violated the MBLSA by "[i]ntentionally, or due to gross or wanton negligence, repeatedly fail [*sic*] to provide borrower's [*sic*] with

---

[3] Plaintiff's Complaint actually alleges that "defendant Flagstar" violated the MBLSA. (Compl. ¶ 48.) Because Flagstar Bank is not a party to this action, the Court assumes that Plaintiff was referring to BANA and Freddie Mac.

12

material disclosures or information required by law[.]" (Compl. ¶ 50(c).) Plaintiff does not refer to any disclosures either Defendant failed to make elsewhere in her Complaint.

Of greater import for purposes of this motion is that the MBLSA does not apply to either Defendant. The MBLSA does not apply to a "[d]epository financial institution whether or not the depository financial institution is acting in the capacity of a trustee or fiduciary." Mich. Comp. Laws § 445.1675(a). A "depository financial institution" is defined as "a state or nationally chartered bank, a state or federally chartered savings and loan association, savings bank, or credit union, or an entity of the federally chartered farm credit system." *Id.* § 445.1651a(f). BANA, a national banking association chartered under the National Bank Act, is exempt from the MMBLSA. Freddie Mac, a corporate instrumentality of the United States is similarly exempt. *Id.* § 445.1675(f) (exempting "[a]gencies or corporate instrumentalities of the United States" from coverage).

Because Plaintiff has not pled facts supporting application of the MBLSA to either Defendant, Count VI is dismissed.

5. *Count VII – Injunctive Relief*

Count VII does not state a claim because injunctive relief is an equitable remedy, not an independent cause of action. *Terlecki v. Steward*, 278 Mich. App. 644, 663, 754 N.W.2d 899, 912 (2008) (citations omitted). Because Plaintiff has not shown an entitlement to any form of relief on any of the counts contained in her Complaint, the Court dismisses Count VII, which sought to enjoin eviction proceedings while this matter was pending.

### 6. *Count VIII – Equitable Right of Recoupment*

In Count VIII, Plaintiff claims that she "has an equitable right of recoupment, whereby any claim asserted against her, legal or equitable, may be set off by any claims she has against [D]efendants." (Compl. ¶ 62.) Plaintiff seeks to "set[] off the claims asserted against her by [D]efendants[.]" (Compl.) In responding to Defendants' Motion to Dismiss, Plaintiff explains that recoupment is proper but fails to provide a cogent explanation of why this is so. (Pl.'s Resp. 13-14.)

Recoupment is an affirmative defense and "is, in effect, a counterclaim or cross action for damages." *McCoig Materials, L.L.C. v. Galui Constr., Inc.*, 295 Mich. App. 684, 694, 818 N.W.2d 410, 416 (2012) (citation omitted). Recoupment is traditionally used by defendants in contract actions as a means of demonstrating an equitable basis for reducing the plaintiff's recovery by any claim the defendant may have to damages arising out of the same contract or transaction. *Id.* at 695, 818 N.W.2d at 417 (citation omitted). Plaintiff has not pled a contractual breach and has not established any basis for the Court awarding her damages. Although Plaintiff explains that she "brought this action as a defense to [] foreclosure[,]" (Pl.'s Res. 13), it is unclear what Plaintiff is trying to accomplish. To the extent Plaintiff "is seeking to rescind the mortgage" by pleading an entitlement recoupment, this effort falls flat. (*Id.*) To the extent she is seeking to "set[] off the claims asserted against her by [D]efendants," Plaintiff has provided this Court with no reason to think the Defendants are asserting claims against her, and there is, therefore, nothing to set off. (Compl.)

Count VIII is therefore dismissed.

14

## IV. CONCLUSION AND ORDER

For the reasons set forth above, the Court concludes that Plaintiff's Complaint fails to state a claim for relief on any of the eight counts included therein.

Accordingly,

**IT IS ORDERED THAT**, Defendants' Motion to Dismiss is **GRANTED** and Plaintiff's Complaint is **DISMISSED WITH PREJUDICE**.


Date:  March 26, 2013     s/PATRICK J. DUGGAN
                          UNITED STATES DISTRICT JUDGE

Copies to:
**John R. Badeen**
**Jill S. Ingber**